# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

**ELECTRONICALLY FILED**
**August 17, 2021 12:06 PM**
**AFTAB PUREVAL**
**Clerk of Courts**
**Hamilton County, Ohio**
**CONFIRMATION 1099135**

**QUINTON CHAPMAN** **A 2102889**

**vs.**

**FIFTH THIRD BANK NATL ASSN**

**FILING TYPE: INITIAL FILING (OUT OF COUNTY) WITH JURY DEMAND**

**PAGES FILED: 10**

EFR200

**IN THE COURT OF COMMON PLEAS**
**FOR HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| QUINTON CHAPMAN<br>1600 Big Brown Ct.<br>Union, KY 41091<br>Plaintiff,<br><br>v.<br><br>FIFTH THIRD BANK, NAT'L ASS'N<br>5001 Kingsley Dr.<br>Cincinnati, OH 45227<br><br>**Serve also:**<br>FIFTH THIRD BANK, NAT'L ASS'N<br>c/o Corp. Services Co.<br>(Stat. Agent)<br>50 West Broad St., Suite 1330<br>Columbus, OH 43215<br><br>**And:**<br><br>MARK RALPH<br>c/o FIFTH THIRD BANK, NAT'L ASS'N<br>5001 Kingsley Dr.<br>Cincinnati, OH 45227<br><br>Defendants. | ) | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff QUINTON CHAPMAN by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

**PARTIES**

1. Chapman is a resident of the city of Union, Boone County, Kentucky.
2. Defendant FIFTH THIRD BANK, NAT'L ASS'N, *et al*., ("Fifth Third Bank") is a foreign-incorporated, for-profit company that conducts business throughout the state of Ohio. The relevant location of the events and omissions of this Complaint took place was 5001 Kingsley Drive, Cincinnati, Ohio 45227.

3. Fifth Third Bank is, and was at all times hereinafter mentioned, Chapman's employer within the meaning of R.C. § 4112 *et seq*. and Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e

4. Upon information and belief, Defendant MARK RALPH is a resident of Ohio.

5. Defendant Ralph is, and was at all times hereinafter mentioned, an owner, manager, supervisor, and/or agent of Fifth Third Bank, and as such, an employer within the meaning of R.C. § 4112 *et seq*. and Title VII.

**JURISDICTION & VENUE**

6. The material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

7. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and/or (3).

8. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

10. Within 300 days of the adverse employment actions described herein, Chapman filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00541 ("EEOC Charge").

11. On May 28, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Chapman regarding the EEOC Charge.

12. Chapman received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

13. Chapman had properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Chapman is a former employee of Fifth Third Bank.

15. At all times noted herein, Chapman was qualified for his position with Fifth Third Bank.

16. At all times noted herein, Chapman could fully perform the essential functions of his job, with or without a reasonable accommodation.

17. Chapman worked for Fifth Third Bank as a National Director of Mortgage Processing from August 2016 until Fifth Third Bank wrongfully terminated Chapman's employment on or about August 19, 2020.

18. Chapman worked for Fifth Third Bank for many years without issues and was essential to the success of his team and their projects.

19. However, once Fifth Third Bank hired Mark Ralph, Chapman began experiencing adverse employment actions against him.

20. Ralph was generally known to be stubborn and inconsiderate of employee needs.

21. Chapman recalled hearing Ralph say harmful comments about his employees like, "I love hiring divorced women. They have nothing else to live for so they will work themselves to death," and "I love it when my staff takes on debt – nothing is better at forcing them to continue to have to keep working ridiculous hours."

22. From these comments, it was obvious to Chapman that Ralph entertained a power complex, particularly over women, causing him to create a hostile and toxic work environment.

23. On or around February 13, 2020, Chapman received his annual performance evaluation where he earned a positive review.

24. In or around March 2020, the COVID-19 pandemic swept across the United States.

25. Many states, including Ohio, instituted Stay-At-Home Orders mandating that all nonessential businesses close and that all businesses send their employees to work from home if at all possible.

26. The COVID-19 pandemic caused mortgage rates to drop substantially causing a huge influx of work in Chapman's department.

27. Further, Chapman sent much of his staff home to work remotely to comply with the Stay-At-Home Order.

28. Coupled with the uncertainty of the virus, working remotely, and the sudden influx of work in his department caused his staff to be pressured with the volume of work.

29. Chapman did everything in his power to stabilize his department including offering suggestions to Ralph like bringing on and utilizing processing assistants.

30. In the past, processing assistants had been hired to help with the remedial tasks.

31. Ralph was combative about Chapman's suggestions and began getting abusive to Chapman about the way Chapman was running the department.

32. Eventually, the work environment became so hostile from Ralph's approach and edicts that Chapman's entire leadership team threatened to walk out if Ralph would not listen to reason.

33. Consistent complaints were made from nearly every department that interacted with Ralph to HR over the course of his short time at Fifth Third.

34. Ralph refused to listen, and eventually resorted to yelling and screaming at everyone.

35. Immediately after this incident, an individual on Chapman's leadership team went and filed a complaint against Ralph.

36. Chapman tried to get through to Ralph about the dangers of losing all the leadership staff at the same time.

37. Ralph's response was dismissive and he said "[w]e will get through it – I once had 25% of my staff quit in one month and we were fine."

38. Chapman eventually went to Ralph's boss, Christopher Shroat, with a complaint about their strained relationship, how he disagreed with Ralph's ideas and stubbornness, and the discriminatory comments he had previously made. This was a protected complaint.

39. Soon after his complaint on or around August 19, 2020, Chapman was called into a meeting with Ralph.

40. In this meeting, Ralph told Chapman that he had lost confidence in Chapman's ability to lead the department and gave him an ultimatum: either resign immediately or take a demotion into a temporary position that would end in a few months. The latter option came with a 33% pay cut and no stock options: a substantial pay cut.

41. Chapman reluctantly took the demotion until he could find a new role.

42. Chapman's employment was then officially terminated on or about August 19, 2020.

43. This demotion and Chapman's ultimate termination ultimatum were adverse employment actions against Chapman.

44. Fifth Third Bank's purported reason(s) for Chapman's employment termination was pretextual.

45. Fifth Third Bank actually terminated Chapman's employment in violation of public policy and in retaliation for his protected complaints.

46. As a result of the above, Chapman has suffered and will continue to suffer damages.

**COUNT I: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

47. Chapman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

48. A clear public policy existed and was manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee because they attempt to comply with Ohio COVID-19 policy.

49. On or around April 2, 2020, Ohio Governor Mike DeWine amended the Ohio Stay-At-Home Order to instruct all non-essential businesses to cease operation unless activities could be continued remotely.

50. This Stay-At-Home Order was a clear public policy in effect at the time that Chapman sent his staff to work from home.

51. Chapman's staff found themselves overwhelmed and overworked trying to balance their new remote work arrangements and a sudden increase in workload caused by a drop in mortgage rates.

52. It is unreasonable to expect people to immediately adapt to remote work and simultaneously take on dramatically more work than previously assigned.

53. In an attempt to help his team succeed during these uncertain times as well as comply with the Stay-At-Home Order, Chapman suggested hiring processing assistants which were used in the past to alleviate his team's workload.

54. Further, Chapman's team threated to walk off the job if something was not done to help reduce the workload.

55. Ralph ignored both Chapman's suggestions and his team's threats, and instead gave Chapman a termination ultimatum.

56. Ralph even told Chapman that the department would be fine because once, he once had over 25% of his staff walk out on him in one month and he was okay.

57. These public policies would be jeopardized if businesses could force people to work remotely without adequate support, thus setting them up to fail and constructively terminating their employment.

58. Further, these public policies would be jeopardized if businesses could fire people simply for suggesting ways to provide adequate support to employees working remotely.

59. Chapman's termination was entirely motivated by his conduct related to the public policy.

60. Fifth Third Bank lacked overriding justification for his termination.

61. As a direct and proximate result of Fifth Third Bank's conduct, Chapman has suffered and will continue to suffer damages.

**COUNT II: RETALIATION**

62. Chapman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

63. As a result of Ralph's conduct described above, Chapman complained about the pushback, unprofessional instances of yelling, and bullying that he and his department were experiencing.

64. Soon after making these complaints and despite Chapman's recent positive performance evaluation, Ralph suddenly "lost confidence in Chapman's ability to lead his department," and gave him a termination ultimatum.

65. Fifth Third Bank's actions, by and through Ralph, were retaliatory in nature based on Chapman's opposition to the unlawful, discriminatory conduct and toxic work environment fostered by Ralph.

66. Pursuant to R.C. § 4112.02(I) and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person had opposed any unlawful discriminatory practice.

67. As a direct and proximate result of Fifth Third Bank's retaliatory discrimination against and termination of Chapman, he suffered and will continue to suffer damages.

**DEMAND FOR RELIEF**

WHEREFORE, Chapman demands from Defendants the following:

a) Issue a permanent injunction:

   i. Requiring Defendants to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendants to expunge Chapman's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Chapman for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Chapman's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Matthew Bruce

Matthew G. Bruce (0083769)
Trial Attorney
Evan R. McFarland (0096953)
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax: (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Quinton Chapman*

**JURY DEMAND**

Plaintiff QUINTON CHAPMAN demands a trial by jury by the maximum number of jurors permitted.

__/s/ Matthew Bruce ____
Matthew G. Bruce (0083769)

UNITED STATES POSTAL SERVICE

ELECTRONIC CERTIFIED MAIL SERVICE RETURN
SUMMONS & COMPLAINT
A 2102889 D1
FIFTH THIRD BANK NATL ASSN
FILED: 08/23/2021 7:01:14

Date Produced: 08/23/2021

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0945 9459. Our records indicate that this item was delivered on 08/20/2021 at 10:20 a.m. in CINCINNATI, OH 45227. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 16524101SEQ1

UNITED STATES POSTAL SERVICE

ELECTRONIC CERTIFIED MAIL SERVICE RETURN
SUMMONS & COMPLAINT
A 2102889 D1
FIFTH THIRD BANK NATL ASSN
FILED: 08/23/2021 7:01:14

Date Produced: 08/23/2021

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0945 9466. Our records indicate that this item was delivered on 08/20/2021 at 12:38 p.m. in COLUMBUS, OH 43215. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 16524106SEQ1

UNITED STATES POSTAL SERVICE

ELECTRONIC CERTIFIED MAIL SERVICE RETURN
SUMMONS & COMPLAINT
A 2102889 D2
MARK RALPH
FILED: 08/23/2021 7:01:15

Date Produced: 08/23/2021

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0945 9473. Our records indicate that this item was delivered on 08/20/2021 at 10:20 a.m. in CINCINNATI, OH 45227. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 16524111SEQ1